1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIERAN ZETO,<br><br>                                   Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; and<br>DOES 1 to 10,<br><br>                                   Defendants. | Case No.:  20-cv-1380-GPC-KSC<br><br>**ORDER (1) DENYING MOTION TO REMAND; (2) GRANTING LEAVE TO AMEND COMPLAINT; AND (3) GRANTING MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>**[ECF Nos. 11, 16, 19]** |

Before the Court are three motions: (1) Plaintiff's Motion to Remand, ECF No. 11; (2) Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 16; and (3) Defendant BMW of North America, LLC ("Defendant" or "BMW NA")'s Motion to Compel Arbitration and to Stay Action, ECF No. 19.  Upon consideration of the motions, the related documents, and relevant law, the Court **DENIES** Plaintiff's request for remand; **GRANTS** leave to file an amended complaint and **ORDERS** the proposed amended complaint, ECF No. 16-2 at 13–19, to be deemed filed as the First Amended Complaint ("FAC"); and **GRANTS** Defendant's motion to compel arbitration and **STAYS** all proceedings in this action until arbitration is completed.

1

## I.   BACKGROUND

On or about October 13, 2017, Plaintiff purchased/leased ("purchased") a vehicle that was manufactured by BMW NA.  Compl. ¶ 5, ECF No. 1-2.  BMW NA provided a written express warranty on the vehicle.  *Id.* ¶ 6.  Plaintiff alleges that during the warranty period, the vehicle had substantial defects, and that despite Plaintiff requesting a repurchase, BMW NA failed to successfully repair the vehicle or replace it.  *Id.* ¶¶ 7, 8.

On February 18, 2020, Plaintiff filed her Complaint in the Superior Court of California, County of San Diego, North County Division, which BMW NA removed to federal court on July 20, 2020 once the state court dismissed co-defendant Irvine Eurocars LLC d/b/a Irvine BMW on June 19, 2020.  BMW NA's Notice of Removal, ECF No. 1 at 2–3.  The Complaint alleges seven causes of action: (1–3) violations of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"); (4) breach of express warranties under the California Commercial Code; (5) breach of implied warranties; (6) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"); and (7) violation of the California Business and Professions Code.  Compl. 2–9, ECF No. 1-2.

On August 19, 2020, Plaintiff filed a Motion to Remand the case back to the state court.  ECF No. 11.  Defendant filed a Response in Opposition to Plaintiff's Motion to Remand the case, which Plaintiff filed a Reply.  ECF Nos. 21, 25.

Plaintiff also filed a Motion for Leave to File Amended Complaint on August 28, 2020.  ECF No. 16.  According to Plaintiff, the proposed FAC re-dismisses Irvine BMW, and removes the original counts 3, 4, and 6.  "Plaintiff remains focus [sic] on pursuing the allegations revolving around Defendant's violations of California's Song Beverly Consumer Warranty Act and Business and Professions Code."  *Id.* at 2.  While Defendant notified the Court that Defendant does not object to Plaintiff filing an amended complaint, Defendant stated, among others, that the proposed FAC "silently and without

2

explanation removes Plaintiff's allegation related to her citizenship." BMW NA's Notice of Non-Opp'n 2, ECF No. 22.

On September 9, 2020, BMW NA filed a Motion to Compel Arbitration and to Stay Action ("MTC"). ECF No. 19. Defendant states that the Motion is made pursuant to the "Arbitration Clause" that is contained in the Motor Vehicle Lease Agreement, which Plaintiff signed in purchasing the vehicle. *Id.* at 2. Plaintiff filed a Response opposing the MTC, and Defendant filed a Reply. ECF Nos. 24, 25.

## II.   JUDICIAL NOTICE

The Court **HEREBY TAKES** judicial notice of the Motor Vehicle Lease Agreement ("Lease Agreement"), the BMW Financial Services Consumer Credit Application ("Credit Application"), and Plaintiff's California Driver's License ("Driver's License"). BMW NA's Req. for Judicial Notice, ECF No. 21. Relatedly, the Court **OVERRULES** Plaintiff's objections pertaining to these three documents. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Here, the Lease Agreement is judicially noticeable because even if it is not explicitly attached to the complaint, it is integral to Plaintiff's claims and its authenticity is not questioned. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Lease Agreement is integral to the complaint, as the original complaint states: "On or about October 13, 2017, Plaintiff purchased/leased (hereinafter referred to as 'purchased') 2018 BMW 530E, vehicle identification number WBAJA9C54JB033423, (Vehicle)." Compl. ¶ 5, ECF No. 1-2; *see also* FAC ¶ 4, ECF No. 16-2. The Lease Agreement's authenticity is not contested. In fact, Plaintiff attached a carbon copy of it when opposing arbitration. Decl. of Nieran Zeto ("Zeto Decl.") Ex. 1, ECF No. 24-2.

The Credit Application is also judicially noticeable.  The information contained in it, such as Plaintiff's name, city and state of residence, and signature, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Plaintiff's Objection to Judicial Notice, ECF No. 11-4, does not address this document.  Rather, Plaintiff makes boilerplate evidentiary objections, *see* Pl.'s Obj. of Evid. 3, ECF No. 11-3, which the Court rejects as being devoid of any specific argument or analysis as to why the document should be excluded.  *See Ferguson v. United States*, No. 15CV1253 JM (MDD), 2018 WL 3570283, at *2 (S.D. Cal. July 25, 2018), *aff'd*, 792 F. App'x 494 (9th Cir. 2020).

Finally, the Driver's License is judicially noticeable as true and correct copies of "matters of public record."  *See United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008).

## III.    REMAND TO STATE COURTS

The Court first addresses whether it has jurisdiction over the case.  Defendant removed the case to federal court, and Plaintiff moved to remand it back to state court. Notice of Removal, ECF No. 1; Mot. to Remand, ECF No. 11.  A federal district court has jurisdiction over any civil action under the diversity jurisdiction statute if complete diversity exists between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  The nature of limited jurisdiction in federal courts and comity principles mean that the defendant has the burden of proof.  *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005).

Based on the state court complaint as the operative complaint and additional evidentiary support, Defendant has sufficiently demonstrated that this Court has diversity jurisdiction over the matter, and that removal to federal court was proper.  Complete diversity exists.  BMW NA is a citizen of Delaware and New Jersey.  The original

complaint and various evidentiary exhibits all demonstrate that Plaintiff is domiciled in California.  The amount in controversy is met as well.  Based on the causes of action in the complaint and Plaintiff's Initial Disclosures with specific monetary demands, it is evident that the amount in dispute is greater than $75,000.  With multiple evidentiary sources that support removal, and scant—if not zero—evidence to the contrary by Plaintiff, Defendant has met the burden of persuasion.  Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

### A.    Operative Complaint

To start, the Court conducts its jurisdiction analysis based on the original complaint that was filed in state court, and not the proposed amended complaint.  "[P]ost-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court."  *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).  "Any other ruling would enable plaintiffs to, upon the realization that their litigation has taken a sour turn in federal court, use a post-removal damage stipulation to remand their case after the parties and the court have invested extensive time and resources."  *Gillette v. Peerless Ins. Co.*, No. CV 13-03161 DDP RZX, 2013 WL 3983872, at *3 (C.D. Cal. July 31, 2013).  BMW NA removed the case on July 20, 2020, and Plaintiff moved to amend the complaint afterwards on August 28, 2020.  Since the motion to amend the complaint was filed after BMW NA's motion for removal, the original complaint filed in state court is the operative document for the Court's review for remand.

### B.    Complete Diversity

Complete diversity exists because for purposes of diversity jurisdiction, Defendant BMW NA is a citizen of Delaware and New Jersey, and Plaintiff is domiciled in California.  First, the Court agrees with BMW NA's uncontested explanation for why it is not a California citizen.  Unnamed defendants are disregarded for purposes of removal,

1  28 U.S.C. § 1441(b)(1), and BMW NA, the only named defendant, is a limited liability

2  company.  For diversity jurisdiction purposes, a limited liability company is a citizen of

3  every state where its owners/members are citizens.  *Johnson v. Columbia Properties*

4  *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  The sole member of BMW NA is

5  BMW (US) Holding Corp., which is organized under Delaware law with its principal

6  place of business in New Jersey.  Since BMW (US) Holding Corp. is a citizen of

7  Delaware and New Jersey, *see* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed

8  to be a citizen of every State . . . by which it has been incorporated and . . . where it has

9  its principal place of business"), BMW NA is also a citizen of Delaware and New Jersey.

10      In addition, Defendant has produced sufficient evidence for the Court to conclude

11  that Plaintiff is domiciled in California.  In analyzing diversity jurisdiction, a person's

12  state citizenship status is determined by where the natural person is domiciled,[1] which is

13  the person's "permanent home, where she resides with the intention to remain or to which

14  she intends to return."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

15  2001).  Although not definitive, a person's residence is prima facie evidence for

16  establishing domicile.  *See, e.g.*, *Kalasho v. BMW of N. Am., LLC*, No. 20-CV-1423-

17  CAB-AHG, 2020 WL 5652275, at *2 (S.D. Cal. Sept. 23, 2020) (citing *Lee v. BMW of N.*

18  *Am., LLC*, No. SACV1901722JVSADSX, 2019 WL 6838911, at *2 (C.D. Cal. Dec. 16,

19  2019)); *see also D.C. v. Murphy*, 314 U.S. 441, 455 (1941); *Barrera v. W. United Ins.*

20  *Co.*, 567 F. App'x 491, 492 n.1 (9th Cir. 2014).

---

[1] To the extent that Plaintiff argues for remand because Plaintiff is not a U.S. citizen, *see* Pl.'s Reply Br. 3–4, ECF No. 23, the Court is unpersuaded.  *See* 28 U.S.C. § 1332(a)(2) (covering disputes between a state citizen and "citizens or subjects of a foreign state," unless that foreign citizen is "lawfully admitted for permanent residence," in which case the analysis focuses on the state domicile).

Here, the original complaint declares that Plaintiff "was at all material times, a competent adult and resident of the State of California."  ECF No. 1-2, ¶ 1.  In addition, the Lease Agreement and Driver's License state that Plaintiff resides in El Cajon, California.  Zeto Decl. Ex. 1, ECF No. 24-2; Decl. of Robert K. Dixon ("Dixon Decl.") Ex. 3, ECF No. 21-1; *cf. Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009) (discussing location of personal and real property, driver's license and automobile registration, etc. as evidence of domicile).  Even further, Plaintiff's Credit Application indicates that by the time of her credit report, Plaintiff had lived in El Cajon for eighteen years.  *Id.* Ex. 2.  Plaintiff cannot hide behind abstract and reactionary[2] burden of proof arguments without producing any evidentiary support to the contrary, especially when multiple sources of evidence—some of which were generated by Plaintiff herself (such as the state complaint and the Lease Agreement which was attached as exhibits in Plaintiff's Court documents)—direct the Court to one conclusion.

Because Defendant is a citizen of Delaware and New Jersey, and because the Court concludes that Plaintiff is domiciled in California based on the preponderance of evidence, complete diversity exists.

## C.    Amount in Controversy

The amount in controversy far exceeds the $75,000 threshold pursuant to 28 U.S.C. § 1332(a) because Plaintiff's own documents say so.  In determining whether removal is proper, the court considers pleadings at the time of removal, *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006), and "summary-judgment-type evidence relevant to the controversy at the time of removal," *Singer v. State Farm*

---

[2] Specifically, the Court notes that challenges to Plaintiff's domicile only arose in Plaintiff's Reply Brief, and Plaintiff's initial Motion for Remand is completely silent on Plaintiff's domicile.

1   *Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citation omitted).  "The basic rule

2   is that, for jurisdictional purposes, the amount in controversy is measured by the amount

3   of the claim."  *Riggins v. Riggins*, 415 F.2d 1259, 1260 (9th Cir. 1969).  The Court must

4   consider the aggregate amount of all damages sought in the complaint because "[t]he

5   amount in controversy is simply an estimate of the total amount in dispute, not a

6   prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627

7   F.3d 395, 400 (9th Cir. 2010); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp.

8   2d 1199, 1205 (E.D. Cal. 2008) ("In measuring the amount in controversy, a court must

9   assume that the allegations of the complaint are true and that a jury will return a verdict

10  for the plaintiff on all claims made in the complaint.").  Applying this legal framework,

11  Plaintiff's Initial Disclosures alone express that Plaintiff seeks damages of "$52,923.99

12  restitution, $105,847.98 civil penalty damages."  Dixon Decl. Ex. 4, ECF No. 21-1 at 19.

13  This amounts to a total of $158,771.97, which does not even account for attorney's fees

14  and costs, consequential and incidental damages, additional punitive damages, and

15  disgorgement of profits—all remedies requested by Plaintiff.

16      The Court rejects Plaintiff's reliance on a "statutory offset" to avoid the amount in

17  controversy requirement, Pl.'s Mem. of P. & A. 4–5, ECF No. 11-1.  Plaintiff argues that

18  under the Song-Beverly Act, damages may be reduced by Plaintiff's usage of the vehicle.

19  *See* Cal. Civ. Code § 1793.2(d)(2)(C).  However, this does not impact the amount in

20  *controversy*, which assumes that the jury will return a verdict for the plaintiff on all

21  causes of action.  Even if some mitigation may occur, Plaintiff cannot both argue that the

22  statutory offset reduces the damages to "zero," Pl.'s Mem. of P. & A. 4, ECF No. 11-1,

23  while also asserting, in the Initial Disclosures, that Defendant has the "burden to prove

24  the amount of the offset for Plaintiff's use."  Dixon Decl. Ex. 4, ECF No. 21-1 at 19.

25      In addition, civil penalties are not speculative and should be included.  In fact, the

26  amount of controversy analysis may include civil penalty damages as long as they are

27

28

recoverable under state law.  *Davenport v. Mut. Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see also Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (including Song-Beverly Act civil penalty damages in the amount in controversy analysis).  California law permits civil penalties up to twice the actual damages.  Cal. Civ. Code § 1794(c).  While courts may need to be wary of punitive damages inflating the amount in controversy as a general concern, not much scrutiny is needed when the Song-Beverly Act expressly states the contours of the damages, and Plaintiff requests that amount.

None of the cases presented by Plaintiff prohibit the consideration of punitive damages or Song-Beverly Act civil penalty damages in an amount in controversy analysis.  Rather, in these cases, the courts excluded punitive damages where the complaints merely stated a general request for punitive damages and the defendants latched on to the prayer without providing additional "facts."  *See Fahed Ismat Zawaideh v. BMW of N. Am., LLC*, No. 17-CV-2151 W (KSC), 2018 U.S. Dist. LEXIS 64723, at *6 to *7 (S.D. Cal. Apr. 17, 2018); *Pontiero v. Geico Gen. Ins. Co.*, No. EDCV 17-1125 JGB (DTBx), 2017 U.S. Dist. LEXIS 129165, at *10 to *11 (C.D. Cal. Aug. 14, 2017); *Edwards v. Ford Motor Co.*, No. CV 16-05852 BRO (PLAx), 2016 U.S. Dist. LEXIS 153618, at *14 to *15 (C.D. Cal. Nov. 4, 2016); *Jackson v. Frank*, No. C12-03975 HRL, 2012 U.S. Dist. LEXIS 174165, at *4 to *5 (N.D. Cal. Dec. 7, 2012); *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998).  Here, Defendant has provided more.  Defendant submitted a detailed breakdown of how the civil penalties were calculated, backed up by passages from the complaint and other evidentiary exhibits.  The civil penalty damages alleged are twice the actual damages (as stated in the complaint), and there is a sensible calculation on what the actual damages looks like, based on what is stated in the Lease Agreement.  Plaintiff's Initial Disclosures provided a hyper-specific damages tabulation as well—in fact, to the cent.

Because Defendant has sufficiently established that Plaintiff seeks damages of restitution and civil penalties which collectively exceed $75,000, the amount in controversy requirement is met regardless of attorney's fees and claims under the Magnuson-Moss Act.  Since the disputes over attorney's fees and the implication of the Magnuson-Moss Act have no bearing on the Court's remand analysis, the Court will not address these issues further.

## IV.   FIRST AMENDED COMPLAINT

Plaintiff moved to file an amended complaint.  Pl.'s Mot. for Leave to File Am. Compl., ECF No. 16.  BMW NA does not object.  BMW NA's Notice of Non-Opp'n, ECF No. 22.  By and through the motion and memorandum, Plaintiff has demonstrated that the amendment will not unduly prejudice the Defendants and that justice requires the grant of leave to file an amended complaint.

Therefore, pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff's Motion for Leave to File Amended Complaint is **GRANTED**.  It is **HEREBY ORDERED** that Plaintiff's proposed amended complaint attached to her Motion, Decl. in Support of Mot. Ex. 3, ECF No. 16-2 at 13–19, is deemed filed as the FAC.  Further, the FAC will be the operative complaint for purposes of analyzing Defendant's MTC, especially since BMW NA does not oppose the amendment.

## V.   ARBITRATION AND STAY OF CASE

Finally, Defendant has moved to compel arbitration and stay the lawsuit until arbitration is complete.  BMW NA's MTC, ECF No. 19.  Defendant relies on the Arbitration Clause, which is part of the Lease Agreement that Plaintiff signed.

The Court concludes that arbitration is required under the Lease Agreement. Under California law, the Arbitration Clause presents a valid agreement to arbitrate— Plaintiff has failed to meet her burden of proving that the Arbitration Clause is unconscionable.  In addition, Plaintiff's claims are all subject to the Arbitration Clause.

As such, the Court will enforce the broad language of the Arbitration Clause, which discusses how "any" claim, dispute, or controversy relating to the vehicle shall be subject to arbitration, which would also include claims arising from BMW NA's express warranties, the Song-Beverly Act, and the Magnuson-Moss Act.  Finally, even though BMW NA is not an express signatory to the Lease Agreement and the Arbitration Clause, it still has standing to compel arbitration as a third-party beneficiary.

### A.    Federal Arbitration Act ("FAA")

The FAA applies when arbitration agreements meet two conditions: (1) the agreement to arbitrate is in writing; and (2) the agreement is part of "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Arbitration agreements that satisfy these two requirements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.*

Pursuant to the FAA, a party aggrieved by the alleged failure of another to arbitrate may petition the Court to compel arbitration in the manner provided in the agreement.  *Id.* § 4.  In ruling on the motion to compel arbitration, the Court must determine two "gateway" issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  Once these two issues are satisfied, the Court must compel arbitration and stay the trial.  *See* 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Plaintiff argues that the FAA does not apply, citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).  Pl.'s Opp'n to MTC 2, ECF No. 24.  However, Plaintiff's reliance on *Arthur Andersen* is misplaced.  *Arthur Andersen* more appropriately stands for the principle that state law "determine[s] which contracts are binding under [the FAA] § 2 and enforceable under § 3 'if that law arose to govern issues

concerning the validity, revocability, and enforceability of contracts generally.'"  556 U.S. at 630–31 (citation omitted).

The Court agrees with Plaintiff that California law governs the formation and validity of the contract, including an arbitration agreement.  However, once it is established that a valid contract exists, the scope of the arbitration agreement is governed by federal law.  *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1059 (9th Cir. 2020) (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013)).  And "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (citation omitted).

## B.    The Arbitration Clause

The Court holds that the Arbitration Clause in the Lease Agreement constitutes a valid agreement to arbitrate between the parties, and that the Arbitration Clause covers the lawsuit before the Court.  Plaintiff has not demonstrated that the Arbitration Clause is unconscionable under California law.  In addition, the Arbitration Clause's broad language accounts for Plaintiff's current dispute over the vehicle—including Plaintiff's claims arising under BMW NA's Warranty Manual and the Song-Beverly Act.

### 1.    Formation and Validity

The Court, applying California law, first addresses whether the Lease Agreement and the Arbitration Clause are valid contracts.  It is undisputed that the signed Lease Agreement (which contains the Arbitration Clause) is in writing, and part of a "contract evidencing a transaction involving commerce," within the meaning of the FAA, 9 U.S.C. § 2.  Instead, Plaintiff's challenge is that the Arbitration Clause is unconscionable and thus invalid under California law.  Pl.'s Opp'n to MTC 10–13, ECF No. 24.

12

To deem a contract unconscionable under California law, there must be both procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted). However, these two elements need not be present in the same degree—rather, they are evaluated on a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* The party asserting unconscionability bears the burden of proof. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) (citation omitted).

### a.   Procedural Unconscionability

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). "The element focuses on oppression or surprise." *Id.* (citing *Armendariz*, 24 Cal. 4th at 114). Oppression arises from the "inequality in bargaining power" that leads to no meaningful choice or negotiation, and surprise is "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (citation omitted).

The Court concludes that the Arbitration Clause is at least partially procedurally unconscionable. Courts have generally found that contracts of adhesion, typically provided on a "take it or leave it" basis, are procedurally unconscionable. *See, e.g.*, *Sanchez*, 61 Cal. 4th at 915 ("Here the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability."); *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003).

There is some element of surprise. It is true that multiple headers warn the Plaintiff to closely read certain parts of the Lease Agreement. For example, the Lease

Agreement provides "NOTICE TO LESSEE: (1) Do not sign this Lease before you read it," or in red and all-capitalized font, "PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS."  Zeto Decl. Ex. 1, ECF No. 24-2; *cf. Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674 (1996) ("Reasonable diligence requires the reading of a contract before signing it.").  Still, the text of the Lease Agreement is not so intuitive that an average consumer can immediately identify the corporate relationships (and how that will affect the contract) between the dealer, financer, assignee, manufacturer, and other affiliates.

But even though there is some procedural unconscionability, that alone is insufficient.  The Court must still scrutinize the substantive terms of the contract. *Sanchez*, 61 Cal. 4th at 915.

### b.    Substantive Unconscionability

Substantive unconscionability focuses on the harshness and one-sided nature of the substantive terms of the contract.  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982).  An adhesive agreement to arbitrate will be deemed substantively unconscionable if it lacks a "modicum of bilaterality." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 116–17 (2000).  This is determined by examining the actual effects of the challenged provisions.  *Ellis v. McKinnon Broad. Co.*, 18 Cal. App. 4th 1796, 1803 (1993).

Here, Plaintiff has failed to demonstrate substantive unconscionability.  The Arbitration Clause gives Plaintiff the right to choose the arbitration forum, including the option to choose the American Arbitration Association or JAMS.  Zeto Decl. Ex. 1, ECF No. 24-2 at 7.  These organizations are recognized as "major arbitration entities" by California courts.  *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 258 (2016).  Plaintiff provides no case law countering Defendant's observation that California courts have

found arbitration procedures by these organizations to be fair and neutral forums—in fact, Plaintiff is completely silent on the matter.

Plaintiff instead makes two arguments, both of which fail.  First, Plaintiff argues that the agreement is unconscionable because it takes away the right to jury trial.  This misses the point.  So long as *both* parties do not have such right, the bilaterality is preserved.  Further, the application of Plaintiff's reasoning would make every arbitration agreement substantively unconscionable, since the whole point of an arbitration is to avoid litigation, including jury trial.

Second, Plaintiff argues that involuntary arbitration would strip claims arising from the Song-Beverly Act and the Magnuson-Moss Act.  The latter is no longer a cause of action in the FAC, so it is moot.  On the former, Plaintiff's interpretation of the Song-Beverly Act—that the Act makes all arbitrations optional—is wrong.  The "qualified third-party dispute resolution process" referenced in the Act is something that manufacturers may establish, and if consumers decide to participate, the consumers may then elect to discard the results and proceed with the lawsuit.  Cal. Civ. Code § 1793.22(c), (d)(2).  Importantly, this "qualified" third-party dispute resolution process does not displace a contractual arbitration agreement.  Plaintiff has not presented any legal authority to support her interpretation, whereas multiple courts have sided with Defendant's interpretation on the issue.  *See, e.g.*, *Lanning v. BMW of N. Am., LLC*, No. 3:19-CV-00773-BEN-LL, 2019 WL 5748518, at *5 (S.D. Cal. Nov. 5, 2019); *Reykhel v. BMW of N. Am. LLC*, No. 19-CV-01900-SK, 2019 WL 10056984, at *4 (N.D. Cal. Aug. 12, 2019).

Since Plaintiff cannot prove substantive unconscionability of the Arbitration Clause, a valid agreement to arbitrate exists under California law.

/ / /

### 2. Scope

Next, the Court addresses whether the Arbitration Clause covers the dispute in front of the Court.  The Arbitration Clause, in part, states the following:

> "Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease).  Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action.

Zeto Decl. Ex. 1, ECF No. 24-2 at 7.  The Lease Agreement defines "I," "me," and "my" as Plaintiff, and "you" and "your" as Irvine BMW or its assignee, BMW Financial Services NA, LLC ("BMW FS").  *Id.* at 4.

Given the broad language of the Arbitration Clause, the Court finds that Plaintiff agreed to arbitrate the current dispute in front of this Court in its entirety.  The current lawsuit is a "claim, dispute or controversy" between Plaintiff and BMW NA, a third-party, "in connection with" a lawsuit originally asserted against Irvine BMW as one of the defendants, which "arises out of or relates to" the "condition of this Vehicle . . . or any resulting transaction or relationship."  Since the current lawsuit constitutes a "Claim" under the Arbitration Clause, it is covered by the agreement to arbitrate.

In response to whether the Arbitration Clause's scope extends to this lawsuit, Plaintiff makes three arguments: (1) Plaintiff's cause of action arises from BMW NA's Warranty Manual which expressly allows court action; (2) the Magnuson-Moss Act bars binding arbitration; and (3) the Song-Beverly Act bars binding arbitration.  Pl.'s Opp'n to MTC 7–10, ECF No. 24.

16

All three arguments are unavailing.  The Court has already addressed and rejected the second and third arguments *supra* page 15 of this Order.  As to the first argument that the cause of action arises from the Warranty Manual, the Arbitration Clause's broad language renders this provision inapplicable.  Here, Plaintiff's breach of warranty claim is predicated on: (1) the defective "check engine" and "restraint malfunction" lights, "excessively loud strange noises emanating from the Vehicle," transmission defects, excessive shaking, and malfunctions in the backup camera and electronics; and (2) BMW NA's failure to repair these alleged problems.  FAC 2–6, ECF No. 16-2.  Such allegations concern the "condition" of the vehicle, which are expressly covered by the Arbitration Clause.

### C.    BMW NA's Standing to Compel Arbitration

Lastly, Plaintiff argues that BMW NA cannot compel arbitration because it is not a signatory to the Lease Agreement and Arbitration Clause.  Pl.'s Opp'n to MTC 2–6, 13–24, ECF No. 24.  Defendant does not dispute its non-signatory status.  BMW NA's Mem. of P. & A. 9, ECF No. 19-1.  After all, the Lease Agreement was entered between Plaintiff and Irvine BMW, and the Arbitration Clause may be invoked by "you" (Irvine BMW or BMW FS) or "I," (Plaintiff)—with no reference to BMW NA.  Zeto Decl. Ex. 1, ECF No. 24-2 at 4, 7.  Instead, Defendant moves to compel arbitration under the doctrine of equitable estoppel and as a third-party beneficiary of the Arbitration Clause.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).  California law allows non-signatories to an arbitration agreement to compel arbitration.  *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237 (2011).  Specifically, a non-signatory may compel arbitration under the doctrine of equitable estoppel.  *Id.*  A non-signatory may

also compel arbitration as a third-party beneficiary to the arbitration agreement. *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013); *see also* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").

The Court holds that BMW NA may compel arbitration as a third-party beneficiary. To compel arbitration as a third-party beneficiary, the third-party must be "more than incidentally benefitted by the contract." *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 70 (1978). Rather, the third-party must demonstrate that it is a "member of a class of persons for whose benefit [the arbitration agreement] was made." *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 839 (2013) (citation omitted). At the same time, the third-party beneficiary's name does not need to appear in the agreement. *Id.* at 838–39. The court assesses whether the third-party is an intended beneficiary "gathered from reading the contract as a whole in light of the circumstances under which it was entered," *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636 (1997), though the intent of the parties "is to be ascertained from the writing alone, if possible," *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002).

In the instant case, the Arbitration Clause—which Plaintiff signed—is exceedingly specific about covered disputes that may arise between Plaintiff and third-parties. The potential "Claim" that may arise between Plaintiff and third parties relating to the vehicle is expressly contemplated—twice. The text of the Arbitration Clause is clear that "any third parties" is to be given broad meaning. It is more than "employees, officers, directors, affiliates, successors or assigns." In addition, the Arbitration Clause explicitly discusses a scenario where the third-party did not sign the Lease Agreement. Further, by including all claims against the third-party that are related to the "condition of this Vehicle," it is plain that the Arbitration Clause foresees and includes the current dispute, where a consumer sues the manufacturer concerning the defects of the car.

20-cv-1380-GPC-KSC

Plaintiff's primary argument is that "the same set of facts were present" in a prior Southern District of California case that ruled against BMW NA, *Jurosky v. BMW of N. Am.*, 441 F. Supp. 3d 963, 966 (S.D. Cal. 2020).  Pl.'s Opp'n to MTC 21–23, ECF No. 24.  However, a review of *Jurosky* reveals that: the "set of facts" are not the same, the text of the arbitration agreement matters, and the instant contract makes BMW NA a third-party beneficiary of the Arbitration Clause.  Consider the two arbitration provisions juxtaposed below:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to . . . purchase or condition of this vehicle, the contact [sic] or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at  your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Jurosky*, 441 F. Supp. 3d at 967–68.

> "Claim" broadly means any claim, dispute *or controversy*, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, *officers, directors, affiliates*, successors or assigns, *or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you*, which arises out of or relates to . . . purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease).  Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action.

Zeto Decl. Ex. 1, ECF No. 24-2 at 7 (emphases added).

The Zeto Arbitration Clause added the term "affiliate," which describes BMW NA's relationship with BMW FS.  Decl. of Tyler Weight, ECF No. 19-3; *see also Fikhman v. BMW of N. Am. LLC*, No. 219CV03963VAPMRWX, 2019 WL 6721626, at *3 (C.D. Cal. Oct. 15, 2019) (finding BMW NA, "the manager" of BMW FS, to be an

19

"affiliate" of BMW FS and thus granting BMW NA's motion to compel arbitration). Further, the Arbitration Clause provides an entire phrase accounting for the scenario where Plaintiff sues third-parties relating to the vehicle. It is no surprise then that numerous courts have ruled in favor of BMW NA whenever the arbitration agreement was more like the instant Arbitration Clause than the provision in *Jurosky*, many times explicitly informing the parties that *Jurosky* is distinguishable. *See, e.g.*, *Saponjic v. BMW of N. Am., LLC*, No. 20-CV-703-BAS-RBB, 2020 WL 4015671, at *2 (S.D. Cal. July 16, 2020); *Rizvi v. BMW of N. Am. LLC*, No. 5:20-CV-00229-EJD, 2020 WL 2992859, at *2 to *3 (N.D. Cal. June 4, 2020); *Pleitez v. BMW of N. Am., LLC*, No. CV 19-10422 PA (JCX), 2020 WL 2084954, at *3 (C.D. Cal. Feb. 27, 2020); *Katz v. BMW of N. Am., LLC*, No. 4:19-CV-01553-KAW, 2019 WL 4451014, at *3 (N.D. Cal. Sept. 17, 2019); *Reykhel v. BMW of N. Am. LLC*, No. 19-CV-01900-SK, 2019 WL 10056984, at *2 to *3 (N.D. Cal. Aug. 12, 2019).

Finally, Plaintiff's reliance on *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1290–91 (9th Cir. 2017) is inapposite. The superficial facts may appear similar: the cellphone manufacturer defendant (Samsung) sought arbitration under the "Customer Agreement" that the customer plaintiff and the cellphone dealer (Verizon) signed. *Norcia* rejected the defendant's third-party beneficiary argument because the defendant could not point to any evidentiary record indicating that the customer and the dealer intended to benefit the manufacturer. *Id.* However, in the current dispute, the terms of the Lease Agreement are far more detailed. The Lease Agreement makes explicit references to "third parties," "affiliates," and controversies relating to the "condition of this Vehicle." These are precise references unlike the general arbitration provision in *Norcia*, which stated: "I understand that I am agreeing to . . . settlement of disputes by arbitration and other means instead of jury trials, and other important terms in the Customer Agreement." *Id.* at 1282 (omission in original).

Based on the express terms of the Lease Agreement, the parties intended BMW NA to be a third-party beneficiary that may invoke the Arbitration Clause.  Because BMW NA may compel arbitration as a third-party beneficiary, the Court finds it unnecessary to additionally analyze BMW NA's standing to compel arbitration under the doctrine of equitable estoppel.

### D.    Stay of the Case

The Arbitration Clause in the Lease Agreement is a valid agreement to arbitrate the dispute in front of this Court.  Further, BMW NA has standing to enforce the Arbitration Clause because it was an intended third-party beneficiary.  Thus, the Court **GRANTS** Defendant's Motion to Compel Arbitration.  Further, pursuant to 9 U.S.C. § 3 and Defendant's unopposed request to stay the litigation, this case is **STAYED** pending the completion of the arbitration.

## VI.    CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.    The Court **DENIES** Plaintiff's Motion to Remand, ECF No. 11;

2.    The Court **GRANTS** Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 16;

3.    The Clerk of Court is directed to **FILE** Plaintiff's proposed First Amended Complaint, ECF No. 16-2 at 13–19, as a separate docket entry;

4.    The Court **GRANTS** Defendant's Motion to Compel Arbitration and to Stay Action, ECF No. 19;

5.    The case is **STAYED** pending completion of the arbitration; and

/ / /

1    6.      Within fourteen (14) days following the conclusion of arbitration, Defendant

2    shall **NOTIFY** the Court of such.

3    **IT IS SO ORDERED.**

4

5    Dated:  November 16, 2020

6                                                       Hon. Gonzalo P. Curiel

7                                                       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

20-cv-1380-GPC-KSC